UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARQUE TAVARES BLANKS,

        Petitioner,

                              CASE NO. 2:08-CV-12800
   v.                          JUDGE STEPHEN J. MURPHY, III
                              MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH ROMANOWSKI,

        Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.    *Procedural Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     E.    *Identification (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     F.    *Dismissal of Juror (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     G.    *Prosecutorial Misconduct (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              a. Questioning Regarding Petitioner's Pre-Trial Detention . . . . . . . . . . . . . . . . . . . . 21
              b. "Mockery of Justice" Comment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     H.    *Suppression of Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     I.    *Ineffective Assistance of Counsel (Claims VI & VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     J.    *Denial of Post-Conviction Relief (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     K.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 30
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     L.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.  The Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Marque Tavares Blanks is a state prisoner, currently confined at the Mound Correctional Facility in Detroit, Michigan.

        2.      On June 25, 2003, petitioner was convicted of first degree premeditated murder, MICH. COMP. LAWS § 750.316; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On July 9, 2003, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, a concurrent term of 2-5 years' on the felon in possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm charge.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE POLICE REFUSED TO CONDUCT A CORPOREAL LINE-UP, CLAIMING ERRONEOUSLY THAT THE DEFENDANT REFUSED TO PARTICIPATE IN THE LINEUP, AND THE DISTRICT COURT ERRONEOUSLY REFUSED TO ORDER A SECOND LINE-UP PRIOR TO CONDUCTING THE PRELIMINARY EXAMINATION, AND THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS THE IDENTIFICATION WITHOUT FIRST HOLDING A HEARING ON THE ISSUE OF WHETHER THE WITNESSES COULD GIVE AN INDEPENDENT BASIS FOR THEIR IN-COURT IDENTIFICATION OF THE DEFENDANT.

        II.     DEFENDANT SUBMITS THAT HE IS ENTITLED TO REVERSAL OF ALL THREE OF HIS CRIMINAL CONVICTIONS AND A NEW TRIAL

IN LIGHT OF THE ABUSE OF DISCRETION OF THE LOWER COURT IN IMPROPERLY DISMISSING A JUROR AFTER BOTH SIDES HAD RESTED THEIR CASE.

III.    DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE PROSECUTOR INTRODUCED EVIDENCE THAT INFORMED THE JURY THAT HE WAS BEING HELD IN JAIL PENDING TRIAL, BY ELICITING TESTIMONY THAT A WITNESS HAD VISITED THE DEFENDANT WHILE HE WAS HELD IN JAIL.

IV.    THE PROSECUTOR VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN DURING ARGUMENT TO THE JURY SHE APPEALED TO THE EMOTIONS AND CONSCIENCES BY ARGUING THAT A NOT GUILTY VERDICT WOULD BE A "MOCKERY OF JUSTICE," AND THAT DEFENDANT'S WITNESSES HAD COMMITTED A "MOCKERY OF JUSTICE" BY TESTIFYING ON HIS BEHALF AS ALIBI WITNESSES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Blanks*, No. 250142, 2005 WL 17850 (Mich. Ct. App. Jan. 4, 2005) (per curiam).

4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Blanks*, 473 Mich. 885, 699 N.W.2d 699 (2005).

5.    On June 22, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims of suppression of exculpatory evidence and ineffective assistance of both trial and appellate counsel. On January 31, 2007, the trial court denied petitioner's motion for relief from judgment, concluding that each of the claims was without merit. *See People v. Blanks*, No. 03-003366 (Wayne County, Mich., Cir. Ct. Jan. 31, 2007) [hereinafter "MRJ Op."]. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals and a subsequent application for leave to appeal in the Michigan Supreme Court, raising the following claims:

I. DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED IN PROTECTION OF USCA V AND XIV AMENDMENT WHEN THE PROSECUTOR FAILED TO SUPPLY DEFENSE COUNSEL WITH DISCOVERY PURSUANT TO *BRADY V. MARYLAND*, 373 U.S. 83 (1963).

II. MR. BLANKS WAS DENIED HIS [SIXTH] AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS UNDER THE FOURTEENTH AND CONST. 1963 ART. 1, §17, AND FAIR TRIAL, THROUGH COUNSEL'S FAILURE TO PROPERLY CROSS-EXAMINE THE STATE'S WITNESSES, FAILURE TO OBJECT TO HIGHLY PREJUDICIAL TESTIMONY, AND FOR FAILURE TO CONDUCT A REASONABLE INVESTIGATION.

III. DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND HIS DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND CONST. 1963 ART. 1, §17 AND A FULL AND FAIR JUDICIAL REVIEW IN THE STATE APPELLATE COURT'S AS COUNSEL REFUSED TO BRING A VALID DISCOVERY ISSUE BEFORE THE COURT OF APPEALS.

IV. THE TRIAL JUDGE WAS ERRONEOUS IN THE DENIAL OF DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Blanks*, 481 Mich. 876, 748 N.W.2d 809 (2008); *People v. Blanks*, No. 278628 (Mich. Ct. App. May 27, 2008).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 1, 2008. As grounds for the writ of habeas corpus, he raises the eight claims that he raised in the state courts.

7. Respondent filed his answer on December 1, 2008. He contends that petitioner's claims are barred by the statute of limitations; petitioner's third and fourth claims are barred by petitioner's procedural default in failing to object to the testimony or comments at trial; petitioner's fifth through seventh claims are barred by petitioner's procedural default in failing to raise the

claims on direct appeal; and all of the claims are without merit.

8.    Petitioner filed a reply to respondent's answer on December 12, 2008.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the July 27, 2002, shooting death of Amber Summers, petitioner's girlfriend. The evidence adduced at trial was accurately summarized in petitioner's brief to the Michigan Court of Appeals on direct appeal:

> Collette Summers testified that her daughter was Amber Summers, and that in July of 2002, she was introduced to her daughter's boyfriend, the Defendant. She indicated that her daughter drove a 1997 green Neon, and that on July 28, 2002, she identified her daughter's body at the Medical Examiner's Office.
>
> Kay Ward testified that she knows the Defendant because he grew up next to her and she is friends with his mother. She indicated that on July 27, 2002, she was at a bingo hall called McKibbon's Hall where her niece and a couple of her girlfriends were celebrating their birthday parties. She further indicated that Amber Summers came to the party and that she observed the Defendant arrive approximately twenty minutes later with two of his friends, which were her nephews. She indicated that later in the evening, she became aware that Amber had been shot in the head and that she went out to attend to her and help place her into the police car. She indicated that she did not see the Defendant at all after that night until almost eleven months later when she saw him in Court.
>
> James Days testified that he was working at McKibbon's on the night of the shooting as a volunteer security guard and was monitoring the parking lot area. Subsequently, he observed a male and a female walking in the parking lot, and they began to argue as the male was grabbing the female's arm. As he and another security guard named Charlie went to intervene, he indicated that the woman informed him that the man had a gun; whereupon he observed the individual pull out the gun, who he identified as the Defendant. He indicated that as the female walked away from the Defendant, he ran towards her and fired off a shot. As she turned around to face him, the Defendant fired a second shot; whereupon she fell to the ground and he took off in a greenish blue Neon. He indicated that the police took her from the scene to the hospital in the squad car, and that he subsequently made the witness statement and described the perpetrator.
>
> Sakena Blackshear testified that she knew the victim Ms. Summers through her little sister, and that she was present at the hall having her birthday party celebrated with three other people. She indicated that Ms. Summers introduced her to the Defendant at the party. Because the event required the participants to bring their own alcohol, there was a three dollar charge for a "set up" which included ice, water, and cups. When Ms. Summers asked the Defendant for three dollars, he

refused to give her any money; whereupon Ms. Blackshear gave the money to the person with the "set up" and then gave the cups, ice and water to Ms. Summers at the table. She indicated that the Defendant and Ms. Summers continued to argue, and Ms. Summers asked her to hold her purse because she was going outside. She indicated that approximately four minutes after the Defendant and Ms. Summers went out the door, someone from the club came in and asked them to turn the music off; whereupon they went outside and observed Ms. Summers laying in the parking lot bleeding from her head. She indicated that she subsequently attended a lineup on February 28, 2003, and picked the Defendant from the lineup.

Charles Bynum testified that he worked as a volunteer at McKibbon's Masonic Lodge on July 27, 2002 as security for the parking lot area with James Days. He indicated that he observed the Defendant and a young woman arguing in the parking lot as he was grabbing her arm. As she was trying to pull away, she told him and Mr. Days that the Defendant had a gun; whereupon he observed the Defendant pull a gun from his pocket and bring it down to his side. He indicated that he subsequently heard a gunshot, and then a second gunshot which struck the woman in her head.

Perry Crouther testified that he was working as a volunteer in the refreshment area in the back near the parking lot; whereupon he heard a gunshot and walked outside. Subsequently, he observed a man and a woman facing each other with the man pointing a gun. At that point, he heard a gunshot and she fell to the ground.

On cross exam, he indicated that he could not identify the shooter.

Sergeant Derek Hasson testified that he responded to a radio run for a woman shot in the head and observed the victim lying in the parking lot with a gunshot wound to her head. He indicated that he secured the scene and interviewed witnesses; whereupon he got a description and the possible name of the perpetrator that he radioed back to dispatch. He said he subsequently went to an address on Sorrento and spoke to a woman who identified herself as Mr. Blank's mother; however, she indicated that he was not home at that time. He indicated that no weapon or casing were recovered at the scene, and that he was not able to locate the Defendant or the green Neon.

Officer David Stoli, an Evidence Technician, testified that he reviewed the scene for physical evidence, but found no spent bullet fragments, casings or impact strikes. He indicated that he [made a] composite [] sketch of the scene.

Jairmarria Blackshear testified that Ms. Summers was her best friend, and that she was at the hall on the night of the shooting to attend her sister's birthday party. She indicated that she observed the Defendant and Ms. Summers in the parking lot, and she indicated that they appeared to be arguing. After she left the hall, she subsequently received a phone call that Ms. Summers had been shot. At that point, she drove back to the hall and observed police officers placing Ms. Summers into a police car.

Charnita Thompson testified that she went to the birthday, dropped off her cousins, and observed Amber Summers standing with a male in the parking lot. She indicated that they looked like they were arguing, and that she observed the male

pushing Ms. Summers away from him. She indicated that she pulled out of the parking lot and returned after receiving a telephone call from her sister Sakena. She indicated that when she arrived, Ms. Summers was already in the police car.

Officer Donald Covington testified that he arrived at the shooting, placed the victim in the back of his scout car, and conveyed her to the hospital.

Dr. Carl Schmidt testified that the cause of death was a single gunshot wound to the head and that the manner of death was homicide.

Sergeant William Anderson testified that he is the officer in charge of the case. He indicated that he had the Defendant extradited from Alabama on January 28, 2003 to be formally charged with the shooting in this case. He also indicated that he followed up on the Notice of Alibi and spoke to some of the witnesses.

The parties stipulated that the Defendant had been previously convicted of a specified felony and that he had not retained eligibility to possess a firearm, and a Motion for Directed Verdict was argued and denied.

Earl Ross testified that he was friends with the Defendant, and that on July 27, 2002, he was at the party at McKibbon's Hall. He indicated that he arrived at 9:30 p.m. with his cousin, Christian Marlborough, and that the Defendant arrived a little bit later. He indicated that the Defendant went in and started talking to his sister, Sharenda Marlborough, and that prior to entering, he, as well as the Defendant, was searched for weapons and contraband before entering the club. He further indicated that the Defendant stayed for approximately a half hour to forty-five minutes, and that he observed the Defendant leave with an individual named Troy. He indicated that he subsequently heard two shots as he was standing in front of the club and that these shots occurred approximately twenty minutes after the Defendant had left [in] his car with the person named Troy.

Sebra Blanks testified that she is the Defendant's sister, and that on July 27, 2002, the Defendant was living with her at her residence on Sorrento. Specifically on July 27, 2002, she indicated that she saw the Defendant that day coming and going, and that he left approximately at six o'clock in the evening to go to the party. Subsequently, at approximately ten forty to forty-five, the Defendant returned with an individual named Troy and the Defendant stayed the rest of the night. She indicated that the Defendant was still up when she went to bed at approximately eleven forty-five, and that there was nothing unusual about his appearance, and that he was laughing and joking.

Gretchan Agee testified that the Defendant is her cousin, and that on July 27, 2002, she went over to his sister, Sebra's house at approximately eight fifteen in the evening. She indicated that she observed her cousin, Christopher Agee, and the Defendant arrive at Sebra's house at approximately ten thirty in the evening and that the Defendant did not appear nervous or upset in any way. She indicated that she left the house with Christopher at approximately eleven o'clock and the Defendant was still in the house.

The defense subsequently rested, and the prosecution called Camillia Mitchell as a rebuttal witness who testified that she lived in the lower flat from Sebra Blanks, and that in the summer of 2002, Ms. Blanks lived with her boyfriend and her

brother in the upper flat.  She further indicated that on July 27, 2002, she observed the Defendant leave the flat and drive in a green Neon which she knew was Ms. Summers' vehicle.  She also observed him take a gun out and place it in the trunk of the car before he left.  She further testified that she went up to Sebra's flat at ten thirty in the evening that night and watched some televison with her until approximately midnight.  She indicated during the entire time, nobody came to the flat, and that Sebra was alone when she arrived in the flat at ten thirty.  She further indicated that she left the upstairs flat at approximately twelve fifteen and stayed up until approximately three o'clock in the morning watching television, and that she did not hear anyone come or leave the flat upstairs.  She further testified that on the following morning, Sebra approached her while she was outside doing yard work and stated that Amber was dead and the police were looking for Marque.

Def.-Appellant's Br. on App., in *People v. Blanks*, No. 250142 (Mich. Ct. App.), at 1-6.

## C.    *Procedural Issues*

Respondent first raises to procedural challenges to petitioner's entitlement to relief.  First, respondent contends that petitioner failed to comply with the statute of limitations.  Second, he contends that many of petitioner's claims are barred by petitioner's procedural default in the state courts.

### 1.    *Statute of Limitations*

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).  In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The statute further provides that the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" In *Artuz v. Bennett*, 531 U.S. 4 (2000), the Court explained that under § 2244(d)(2), "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement in the official record. And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable rules governing filings." *Id*. at 8 (emphasis in original) (citations omitted). The Court further explained that the rules governing filings "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id*.

Here, the Court need not engage in a detailed calculation of the limitations period, because respondent's argument presents a simple legal question. Respondent argues petitioner did not file an application for leave to appeal from the trial court's denial of his motion for relief from judgment within 21 days of that judgment, as required by MICH. CT. R. 7.205(A). Under respondent's argument, because petitioner did not file an application for leave to appeal within the 21 day period, his application for postconviction relief was no longer "pending" under § 2244(d)(2) after the trial court denied the motion for relief from judgment, and his application is therefore untimely. Respondent's argument, however, ignores both Rule 7.205(F) and Rule 6.509(A). The latter

provides that "[a]ppeals from decisions under this subchapter are by application for leave to appeal to the Court of Appeals pursuant to MCR 7.205. The 12-month time limit provided by MCR 7.205(F)(3), runs from the decision under this subchapter." MICH. CT. R. 6.509(A). Rule 7.205(F), in turn, provides that if a party does not file an appeal of right or application for leave to appeal within the time provided in Rule 7.204(A) or Rule 7.205(A), the party may file a delayed application for leave to appeal within 12 months of the judgment or order from which appeal is sought. *See* MICH. CT. R. 7.205(F)(1), (3). Here, there is no question that petitioner filed a delayed application for leave to appeal within the time allowed by Rule 7.205(F), and respondent does not argue that petitioner's application is untimely if the time his appeals were pending in the Michigan Court of Appeals and Michigan Supreme Court tolls the limitations period under § 2244(d)(2). Contrary to respondent's argument, the Michigan courts routinely treat delayed applications for leave to appeal as timely, properly filed appeals. *See People v. Porter*, 476 Mich. 865, 720 N.W.2d 289 (2006) (". . . defendant's application for leave to appeal was timely filed in the Court of Appeals pursuant to MCR 7.205(F)(3) . . ."); *People v. Edge*, 476 Mich. 860, 717 N.W.2d 883 (2006) (same); *cf. People v. Buriel*, No. 238416, 2003 WL 462478, at *1 (Mich. Ct. App. Feb. 21, 2003) (under former Rule 6.311(A), which allowed for a motion to withdraw a plea within the time for filing an application for leave to appeal, such a motion was timely if filed within the one year period provided by Rule 7.205(F)(3)); *People v. Highland*, 482 Mich. 881, 752 N.W.2d 465 (2008) (suggesting the same); *People v. Schmidt*, No. 243775, 2004 WL 345374, at *1 (Mich. Ct. App. Feb. 24, 2004) ("Defendant failed to file a motion to withdraw his plea or for resentencing within the twelve-month period for seeking delayed leave to appeal.").

Thus, the Court should conclude that petitioner's delayed application for leave to appeal,

filed within the time explicitly authorized by Rules 6.509(A) and 7.205(F)(3), was "properly filed" under § 2244(d)(2), and thus served to toll the limitations period. Because respondent does not claim that petitioner's application is untimely if this period is tolled, the Court should reject respondent's limitations argument.

    2.    *Procedural Default*

Respondent also contends that many of petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. He also contends that petitioner's third and fourth claims, raising evidentiary and prosecutorial misconduct issues, are barred by petitioner's failure to object at trial. The Court should decline to resolve petitioner's claims on the basis of procedural default.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported

default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). Although the trial court rejected the claims on the merits, the Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue. *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a

petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the difficult questions discussed above, the procedural default analysis is significantly more complicated than the analysis of petitioner's substantive claims for relief, and the Court should therefore proceed to the merits of petitioner's claims. Indeed, the Sixth Circuit itself has taken this approach. *See Roush v. Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

Further, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner contends that his appellate counsel was ineffective for failing to raise his fifth through seventh claims on direct appeal, and that his trial counsel was ineffective for failing to object at trial. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits

of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D.

Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527

U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits

mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

14

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Identification (Claim I)*

In his first claim, petitioner contends that he was denied a fair trial by the in-court identification made of him by Bynum and Days, the volunteer security guards working at the event. He contends that the police refused to put him in a lineup to be identified by these witnesses, and that their in-court identifications were unreliable. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does

not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pretrial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

2.    *Analysis*

Here, there was no testimony presented at trial regarding any pretrial identification of petitioner by Bynum and Days. On the contrary, much of petitioner's argument is his complaint that he was entitled to have these two witnesses view a lineup but was denied that right. With respect

to Bynum and Days, there was only the in-court identification of petitioner made by these witnesses. Thus, the question here is whether the in-court identifications made by Bynum and Days were tainted by an impermissibly suggestive pre-trial identification procedure. The Court should conclude that they were not. As I have previously explained,

> the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification. Rather, "[g]enerally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir.1994). Thus, "[a]ny suggestiveness in the courtroom identification procedure is a matter for the jury to consider in weighing the persuasiveness of the witness's testimony." *Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir.1995); *see also, McFowler v. Jaimet*, 349 F.3d 436, 450 n. 3 (7th Cir.2003).

*Cameron v. Birkett*, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004) (Gadola, J., adopting report of Komives, M.J.); *see also, Long v. Donnelly*, 335 F. Supp. 2d 450, 459 (S.D.N.Y. 2004). Here, the witnesses' in-court identifications were subject to cross-examination by petitioner's counsel, and counsel argued that their testimony was unreliable. Any suggestiveness in the courtroom identification was a matter for the jury in assessing the weight to be given the witnesses' testimony, not a matter of admissibility.

Nor is petitioner entitled to habeas relief based on the failure of the police to place him in a lineup to be viewed by Bynum and Days. It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Regardless of whether state law conferred on petitioner a right to participate in a lineup, a criminal defendant "enjoys no constitutional right to participate in a corporeal lineup." *McMillian v. Berghuis*, No. 1:06-cv-057,

2009 WL 3877510, at *25 (W.D. Mich. Nov. 18, 2009); *see also*, *Morris v. Giurbino*, 162 Fed. Appx. 769, 771 (9th Cir. 2006) ("[T]he United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup"); *Reyes v. Slayton*, 341 F. Supp. 926, 927 (W.D. Va. 1972). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Dismissal of Juror (Claim II)*

Petitioner next contends that he was denied a fair trial by the dismissal of a juror after trial had begun. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

"A court enjoys considerable discretion to remove any juror who is unable to perform his or her duties. A reviewing court will only find abuse of that discretion where the defendant has shown resultant prejudice. Substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 620 (W.D.N.Y. 2003) (citations and internal quotations omitted); *see also*, *United States v. Powell*, 15 Fed. Appx. 337, 339 (6th Cir. 2001); *Olszewksi v. Spencer*, 369 F. Supp. 2d 113, 142-43 (D. Mass. 2005), *aff'd*, 466 F.3d 47 (1st Cir. 2006).

As explained by the Michigan Court of Appeals:

> During the trial, one of the impaneled jurors approached the deputy and informed him that she knew by appearance, not name, a member of defendant's family who was attending the trial from playing bingo with her at the local hall. The trial court questioned the juror at length concerning the extent of her contact with defendant's family member and her ability to decide this case impartially. Prior to the conclusion of trial testimony and jury deliberations, the trial court excused the juror after stating that it was "greatly concerned" about the juror's answers to the court's questions. The trial court found that the juror saw defendant's family member between three and five times a week at bingo. The trial court also found that the juror expressed fear of possible consequences due to her involvement with the case and ambivalence toward her ability to render a fair and impartial verdict. The trial court noted that the juror's "demeanor" and "body language" during questioning indicated

> her uneasiness with the situation. The trial court concluded that the juror "show [s] a state of mind that will prevent her from rendering a just verdict, and therefore I am going to excuse her."

*Blanks*, 2005 WL 17850, at *2, slip op. at 2-3.  Under these circumstances, petitioner cannot show that the trial court abused its broad discretion in excusing the juror.  The juror became aware that she knew a member of petitioner's family, and expressed reluctance about her ability to be fair and impartial.  It was thus well within the trial judge's discretion to excuse the juror and seat an alternate.  Further, petitioner has not demonstrated any prejudice from this decision.  He does not contend that the juror's dismissal was based on the juror's views on the merits of the case, nor does he allege that any juror, including the alternate chosen to replace the excused juror, was biased against him.  In the absence of such a showing of prejudice, petitioner is not entitled to relief.  *See Powell*, 15 Fed. Appx. at 339.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Prosecutorial Misconduct (Claims III & IV)*

Petitioner next claims that the prosecutor committed misconduct by questioning Agee, his alibi witness, regarding whether she had visited petitioner in jail prior to trial.  He also argues that the prosecutor committed misconduct by arguing that a verdict of acquittal would be a "mockery of justice."  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* (internal quotation

omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

2.      *Analysis*

a. *Questioning Regarding Petitioner's Pre-Trial Detention*

Petitioner contends that he was denied a fair trial by the prosecutor's reference, during questioning of a defense witness, to his pretrial detention. During cross-examination of Gretchan Agee, petitioner's alibi witness, the prosecutor sought to explore whether Agee had concocted the alibi testimony with petitioner's assistance. During this testimony, it was Agee who first indicated that she had visited petitioner in jail. The prosecutor asked, "How did you end up being an alibi witness?", to which Agee responded, "I went to visit [petitioner]." Trial Tr., dated 6/24/03, at 127. The prosecutor then asked, "You went to the Wayne County Jail at the time, right?" *Id*. at 128. The remainder of the testimony was directed at the contents of that conversation and Agee's alibi testimony in general. *See id*. at 128-32.

In these circumstances, petitioner cannot show that the brief reference to petitioner's incarceration pending trial deprived him of a fair trial. Neither the witnesses nor the prosecutor

suggested that petitioner was incarcerated for some crime other than the crime for which he was on trial, and the jury likely would have already suspected that petitioner was incarcerated on the charges on which he was being tried given the seriousness of those charges. Further, the testimony about petitioner's incarceration was limited to the fact of pre-trial confinement, necessary to give context to the witness's testimony regarding her conversations with petitioner. In these circumstances, the prosecutor's and witness's "fleeting, context-setting references to pre-trial detention" were not improper and did not deprive petitioner of a fair trial. *Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1244 (E.D. Mich. 1993) (Gadola, J.); *see also*, *Burton v. Renico*, 391 F.3d 764, 777-78 (6th Cir. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. "Mockery of Justice" Comment

Petitioner also contends that he was denied a fair trial by the prosecutor's comments during rebuttal argument. At the conclusion of his closing argument, defense counsel argued that based on the evidence the jury heard, "a finding of not guilty should be entered in this case." Trial Tr., dated 6/25/03, at 96. The prosecutor immediately began her rebuttal argument with the following comment:

> Finding of not guilty in this case based on this evidence would be a mockery of justice. A mockery of justice.
> Kind of like the mockery of justice the defendant's family members, Miss Blanks and Miss Agee tried to do here in court. That's a mockery of justice.

*Id*. Although this comment may have approached, or even crossed, the line separating vigorous argument from improper comment, petitioner cannot show that the comment deprived him of a fair trial. The comments fall far short of even more egregious comments which have been held not to deprive a defendant of a fair trial. *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995)

(petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws"). Further, there was significant evidence of petitioner's guilt. Two eyewitnesses testified to seeing petitioner shoot the victim, and a number of other witnesses testified to the argument petitioner and the victim had at the bingo hall and their leaving the hall together shortly before the shooting. In addition, petitioner fled to Alabama shortly after the shooting, exhibiting a consciousness of guilt. In light of this evidence, the prosecutor's isolated "mockery of justice" comment did not deprive petitioner of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Suppression of Evidence (Claim V)*

Petitioner next contends that the prosecutor suppressed exculpatory evidence in the form of the police statement of rebuttal witness Camillia Mitchell. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show both that the prosecutor withheld evidence which was both (1) favorable to the accused and (2) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the evidence favorable or exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514

U.S. 419, 435 (1995). If, one the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

2.    *Analysis*

As noted above, petitioner had no constitutional right to discovery, *see Weatherford*, 429 U.S. at 559, and he therefore cannot establish his entitlement to habeas relief merely by demonstrating that the prosecution failed to provide discovery information in violation of a court order or that he was "surprised" by Mitchell's testimony. Any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.). Rather, petitioner must show that he was deprived of material, exculpatory information by the prosecution's omission. Petitioner has failed to make this showing.

Specifically, petitioner cannot show that Mitchell's statement to the police was suppressed. Even assuming–contrary to the trial court's finding, *see* MRJ Op., at 3–that the statement was not provided to petitioner as part of the initial discovery material provided by the prosecutor, it was provided to counsel at trial. The record establishes that counsel was given time to review the statement and had the opportunity to cross-examine Mitchell regarding the statement. *See* Trial Tr., dated 6/24/03, at 51-60. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the factfinder, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). "[I]f previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced

by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation

omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes

prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994). Here, petitioner does not

point to any prejudice arising from the delayed disclosure of Mitchell's statement. The trial court

afforded counsel the opportunity to review the statement and counsel was able to effectively cross-

examine Mitchell regarding inconsistencies between her statement and her trial testimony. In light

of the fact that petitioner was able to make full use of the statement at trial, he has failed to establish

that the statement was "suppressed" within the meaning of the *Brady* rule. Accordingly, the Court

should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Ineffective Assistance of Counsel (Claims VI & VII)*

Petitioner next contends that he was deprived of the effective assistance of both trial and

appellate counsel. Specifically, he contends that trial counsel was ineffective for failing to: (1) move

for a continuance to investigate Mitchell's police statement; (2) object to testimony about his pretrial

incarceration; and (3) object to the prosecutor's "mockery of justice" comment. Petitioner also

contends that his appellate counsel was ineffective for failing to present his *Brady* claim on appeal.

The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel

protects the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's

errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at

687.  These two components are mixed  questions of law and fact.  *See id*. at 688.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.    *Trial Counsel*

Petitioner first contends that trial counsel was ineffective for failing to seek a continuance and for failing to object to the prosecutor's misconduct.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

With respect to the continuance issue, petitioner has failed to demonstrate that counsel was deficient or that he was prejudiced by counsel's performance.  As explained above, during Mitchell's testimony counsel was provided a copy of Mitchell's statement and was granted time by

the court to review the statement. Counsel did so, and effectively cross-examined Mitchell regarding inconsistencies between her statement and her trial testimony. Petitioner does not suggest what need there was for a further continuance, or what additional impeachment information could have been developed had a continuance been granted. In the absence of any specific indication of impeachment evidence lost because of counsel's failure to request a continuance, petitioner is not entitled to habeas relief on this claim.

Likewise, petitioner cannot show that he was prejudiced by counsel's failure to object to the prosecutor's elicitation of pre-trial incarceration testimony or the prosecutor's "mockery of justice" comment. As noted above, the pre-trial incarceration testimony was not improper, and thus petitioner cannot show that counsel was deficient for failing to raise a meritless objection. Further, because neither the pre-trial incarceration testimony nor the "mockery of justice" comment was sufficiently prejudicial as to deprive petitioner of a fair trial, it follows that petitioner cannot establish that he was prejudiced by counsel's failure to object. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

3.      *Appellate Counsel*

Petitioner also contends that his appellate attorney was ineffective for failing to raise his *Brady* and related ineffective assistance of trial counsel claims on direct appeal. To demonstrate prejudice resulting from appellate counsel's failure to raise an issue on appeal, petitioner must show

that the omitted claim would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying claims are without merit, and petitioner therefore cannot show that counsel was ineffective for failing to raise the claims on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Denial of Post-Conviction Relief (Claim VIII)*

Finally, petitioner contends that the trial court erred in denying his motion for relief from judgment. To the extent that petitioner is alleging some defect in the court's resolution of his motion apart from the merit of the underlying substantive claims, which are addressed above, petitioner is not entitled to habeas relief. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not

"result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). The trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990). In short, petitioner's challenge to the state court post-conviction proceedings is not cognizable on habeas review.

K.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. The in-court identifications of Days and Bynum were not tainted by an pre-trial identification procedure, and thus it is clear that any issue regarding their in-court identifications went solely to weight, not admissibility. Further, it is clear that petitioner had no constitutional right to participate in a corporeal lineup. Thus, the resolution of petitioner's first claim is not reasonably debatable. It is equally well-established that a court has broad discretion in deciding whether to dismiss a juror, and the facts surrounding the dismissal of the juror demonstrate that the trial court did not abuse this broad discretion. Thus, the resolution of petitioner's juror dismissal claim is not reasonably debatable. In light of the overwhelming evidence of petitioner's guilt and the isolated nature of the comments, it is not reasonably debatable that the prosecutor's allegedly improper comments and questions did not deprive petitioner of a fair trial. Further, because petitioner was provided a copy of Mitchell's statement and had an opportunity to review the statement and cross-examine Mitchell thereon, the resolution of petitioner's *Brady* claim is not reasonably debatable. And because the underlying substantive claims upon which they are based are not reasonably debatable, it follows that the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. Finally, it is clear that any error in the trial court's denial of petitioner's motion for relief from judgment does not provide a cognizable basis for habeas relief, and thus the resolution of this claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

L.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/18/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 18, 2010.

s/Eddrey Butts
Case Manager